UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KEITH L. BLACKWELL, ) ) Plaintiff, ) ) v. ) ) E. TRUEBLOOD, et al. ) ) Defendants. ) ) ──────────────────────── ) ) UNITED STATES OF AMERICA, ) ) Interested Party. ) | No. 2:17-cv-00407-JPH-DLP |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Keith L. Blackwell alleges that defendants Trueblood, Mata, and Wilson were deliberately indifferent to his chronic obstructive pulmonary disease (COPD) and that defendant Bell failed to provide safe living conditions at the Federal Correctional Complex Terre Haute (FCC Terre Haute). The claims are brought pursuant to the theory recognized in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

Before the Court is the defendants' motion for summary judgment, dkt. 151, which is fully briefed and ripe for review. Dkt. 175; dkt. 176. For the reasons explained in this Order, the Court grants defendants' motion for summary judgment.

**I.
Summary Judgment Standard**

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.
## Factual Background[1]

Mr. Blackwell was incarcerated at FCC Terre Haute on two occasions: from January 11, 2016, to July 11, 2016; and from April 10, 2017, to January 8, 2018. Dkt. 151-2, at ¶ 4. The claims in this case relate to his time at FCC Terre Haute from January 11, 2016 through February 2016.

---

[1] Mr. Blackwell's response to the motion for summary judgment was not sworn under penalties of perjury and did not include an affidavit, however he certified that the information in the response was true. The Court will reference Mr. Blackwell's version of events where relevant. However, none of the potential disputes of fact he raises in his response are material to the outcome of his claims.

The parties agree that the only claims before the Court are the claims that Mr. Blackwell raised in two requests for administrative remedy:

- No. 850591, filed on February 1, 2016, which alleged that exposure to asbestos, mold, and mildew at FCC Terre Haute had exacerbated Mr. Blackwell's COPD and that Clinical Director Dr. Wilson denied Mr. Blackwell access to a medical specialist, and

- No. 854080, filed on February 26, 2016, which alleged that "Daugherly, MLP" was not qualified to treat Mr. Blackwell's COPD and had used him as a guinea pig in treating his infection.

*See* dkt. 73; dkt. 65; dkt. 59-6; dkt. 59-7.

**A. Mr. Blackwell's Medical Treatment at FCC Terre Haute**

Before coming to FCC Terre Haute, Mr. Blackwell had been incarcerated at FCI Lompoc. His COPD was "out of control," and he required frequent medical visits. Dkt. 151-1 at 31, 62.[2] He was transferred to FCC Terre Haute, by way of the Oklahoma Transfer Center, because FCC Terre Haute could provide a higher level of medical care than was available at FCI Lompoc. Dkt. 151-2. While at the Oklahoma Transfer Center at the end of December 2015, Mr. Blackwell attended sick call and reported that the color of his sputum had changed. He was prescribed azithromycin, an antibiotic. After completing the medication, medical records indicate that Mr. Blackwell reported feeling better, although he disputes this. *Id.* at 118-19; dkt. 151-2; Dkt. 151-1 at 139-40.

On January 12, 2016, the day after he arrived at FCC Terre Haute, Mr. Blackwell was seen by Health Services and was issued a new CPAP machine. Dkt. 151-2. He was next seen on January

---

[2] Mr. Blackwell's deposition consists of two volumes but was submitted as a single exhibit at dkt. 151. The page numbers of the single exhibit do not correspond to the page numbers on the transcript volumes. The Court refers to the exhibit page numbers as stamped on the documents by the Court's electronic filing system.

3

14, 2016, by Dr. Elizabeth Trueblood. During this visit, Mr. Blackwell was evaluated for a number of conditions, including depression, diabetes, low back pain, COPD, HTN, and GERD. Dr. Trueblood observed that Mr. Blackwell's pulse oxygen level remained stable while walking so she recommended a walker. She advised Mr. Blackwell that staying in a wheelchair would be detrimental to his overall health. Medical records show that Dr. Trueblood issued Mr. Blackwell a walker that day, but Mr. Blackwell asserts that the did not switch to a walker until February 11, 2016 and before that time he walked behind a wheelchair. Dkt. 151-5 at 1; dkt. 151-1 at 141-42; dkt. 175 at 2. He currently uses a walker without complaint. Dkt. 151-2; dkt. 151-1 at 146. Mr. Blackwell was not in respiratory distress and did not report a COPD flare at this appointment. Dkt. 151-1 at 146-50.

On January 21, 2016, the prison received the results of the sputum culture performed at the Oklahoma Transfer Center. Dkt. 59-7 at 14. It indicated a sensitivity to Bactrim and other antibiotics. Mr. Blackwell did not inform anyone at FCC Terre Haute that a sputum culture had been performed while he was at the Oklahoma Transfer Center. Dkt. 151-1 at 79, 162. It appears from the record that medical staff at FCC Terre Haute were unaware of the culture until PA Heather Mata reviewed the results on February 8, 2016.

On February 1, 2016, Mr. Blackwell filed a request for administrative remedy, stating that the presence of mildew, mold, and asbestos had caused his COPD to worsen. Dkt. 59-6. The next day, Mr. Blackwell reported to Health Services that he was having a COPD flare. Mr. Blackwell admits that he filed his request for administrative remedy before seeking treatment at Health Services and that he had not reported a COPD flare to Health Services before February 2, 2016. Dkt. 151-1 at 153-55.

On February 2, 2016, Mr. Blackwell was seen by PA Genevieve Daugherty, who is not a defendant in this action. PA Daugherty ordered a chest X-ray and a course of azithromycin. Although Mr. Blackwell has alleged that PA Mata prescribed the azithromycin, he cannot recall his basis for that claim and the record reveals that it was PA Daugherty, not PA Mata, who prescribed the antibiotic. Dkt. 151-6; dkt. 151-1 at 160-62. Mr. Blackwell was again seen by PA Daugherty on February 4, 2016. She noted that his chest X-ray was negative and prescribed nebulizer breathing treatments three times daily for seven days as well as IM Solu-Medrol, a steroid. Dkt. 151-2 at 5; dkt. 151-14 at 3.

On February 8, 2016, Mr. Blackwell was seen by PA Mata who prescribed a 14-day course of Bactrim based on the results of the sputum culture. Dkt. 151-2 at 5.

Neither Dr. Trueblood nor Dr. Wilson were involved in treating Mr. Blackwell on February 2, 4, and 8, 2016. *Id*.; dkt. 151-1 at 171-72. Between February 8, 2016, and April 15, 2016, Mr. Blackwell reported no COPD flares. Dkt. 151-2 at 5. On April 15, 2016, Dr. Wilson reported that Mr. Blackwell asked Dr. Wilson to decrease his care level from a 3 to a 2 because he was "doing great." *Id*.; dkt. 151-4 at 1. Mr. Blackwell disputes this. Dkt. 151-1 at 176. He alleges in his unsworn response brief that his care level was decreased by Dr. Wilson in retaliation for Mr. Blackwell's complaints. Dkt. 175 at 4. A retaliation claim is not proceeding in this action.

After determining that Mr. Blackwell met the criteria for care level 2, Dr. Wilson made the change and Mr. Blackwell was later transferred to FCI Sheridan. *Id*.; dkt. 151-1 at 39. Eventually, his COPD again worsened, and he was transferred back to FCC Terre Haute. Dkt. 151-1 at 193. Mr. Blackwell contends in his unsworn response brief that he was told at FCI Sheridan that he never should have been moved from FCC Terre Haute. Dkt. 175 at 4.

### B. Physical Conditions at FCC Terre Haute

Mr. Blackwell's February 1, 2016 request for administrative remedy claims that his COPD was exacerbated by exposure to asbestos, mold, and mildew. He also complained that FCC Terre Haute lacked adequate ventilation, distress call buttons, and reasonable accommodations or accessibility for wheelchairs and walkers.

Mr. Blackwell believes that vents were covered up in cells and that he received no fresh or recirculated air. Dkt. 151-1 at 51, 93-94. Mr. Blackwell sent an email to Warden Bell about these conditions on September 21, 2017, after this lawsuit had been filed.

The Bureau of Prison's National Occupational Safety and Health Policy (Program Statement 1600.11) provides that for facilities such as FCI – Terre Haute, "[a]t least 10 cubic feet of fresh or recirculated filtered air per minute per person must be provided for inmate cells/rooms, officer's stations, and dining areas." Dkt. 151-9. A ventilation survey must be regularly conducted in inmate cells and dining areas to ensure that proper ventilation is provided. A ventilation survey of FCI – Terre Haute was conducted between April 26 and April 28, 2016. As part of the survey, flow rates were randomly gathered in different parts of FCI – Terre Haute, including the housing units. The survey concluded that none of the flow rates fell below the requirements. *Id.*

Some cells at FCI – Terre Haute contain pipe chases, which are panels that enable a person to access the pipe system and are not a part of the ventilation system. Theses pipe chases were covered up due to security concerns, as inmates were using pipe chases to store contraband. *Id.*

Mr. Blackwell testified at his deposition that he could see asbestos in the shower and in windowsills, but that he did not know if it was friable. Dkt. 151-1 at 50-51. The Bureau of Prisons' National Occupational Safety and Health Policy (Program Statement 1600.11) provides guidance on the management of asbestos in federal prison facilities. Monthly inspections are required to

"document needed repairs on known or suspected ACM (asbestos-containing material.)." Dkt. 151-9. FCI – Terre Haute conducts monthly inspections of the facility. During the time that Mr. Blackwell was incarcerated at FCI – Terre Haute, these monthly inspections did not identify any potential friable asbestos in the housing units. *Id*.

Mr. Blackwell also testified at his deposition that he could see mold and mildew around the facility but did not know whether it contributed to any breathing problems. Dkt. 151-1 at 48-49. Finally, Mr. Blackwell complains that cells at FCC Terre Haute do not have duress alarm buttons. The Bureau of Prison's National Fire Protection Policy (Program Statement 1600.13) provides that "Inmates in Use Condition III, IV, and V facilities must be provided with the means to notify staff of a fire or similar emergency. This can be accomplished by duress alarms, audible supervision, visual supervision, or other reliable means." Dkt. 151-9. FCC Terre Haute does not have duress alarms in cells, but cells are monitored through both audible and visual supervision. *Id*.

### C. Expert Testimony

Dr. Johanna Sampson, a board certified and practicing family physician reviewed Mr. Blackwell's medical records, amended complaint, administrative remedies, and initial disclosures. She concluded that the medical treatment provided to Mr. Blackwell by Dr. Trueblood, Dr. Wilson, and PA Mata was appropriate and within the applicable standard of medical care. She also found that these defendants did not ignore any orders from Mr. Blackwell's prior treating physicians and that his COPD did not appear to be exacerbated by any exposure to mold, mildew, asbestos or ventilation issues because his frequency of sick calls and hospitalizations decreased during his four months at FCC Terre Haute. Dkt. 151-13; dkt. 151-14.

## III.
## Discussion

At all times relevant to Mr. Blackwell's claim, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). "A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

The defendants do not dispute that Mr. Blackwell's COPD constitutes a serious medical condition. Instead, they argue that they were not deliberately indifferent to it.

### A. Warden Bell

Mr. Blackwell conceded at his deposition that he did not seek medical care before filing the first request for administrative remedy at issue in this case. Dkt. 151-1 at 153-55. The medical

defendants cannot have been deliberately indifferent to a COPD flare they were not aware of. *Farmer*, 511 U.S. at 834 (deliberate indifference requires that the defendant knew about the plaintiff's condition and the substantial risk of harm it posed). Although Mr. Blackwell complained in this first request for administrative remedy that various prison conditions had exacerbated his COPD, the record shows that the prison conducted regular tests and surveys to ensure proper ventilation and that there was no exposed asbestos. What Mr. Blackwell thinks are covered vents are actually chase pipes that are not a part of the prison's ventilation system. As for potentially harmful mold and mildew, Mr. Blackwell's observation of mold and mildew is insufficient to survive summary judgment on this claim. He has no evidence that what he observed presented a risk of serious harm or that it exacerbated his COPD. Without such evidence, Mr. Blackwell cannot demonstrate that the Warden was deliberately indifferent to any substantial risk to his health. *Farmer*, 511 U.S. at 834 (deliberate indifference requires plaintiff to show that defendants knew of and disregarded a substantial risk of harm). The record demonstrates that, despite the flare in February, Mr. Blackwell's COPD generally improved while he was at FCC Terre Haute.

Although Mr. Blackwell believes the prison is required to have duress alarms, he has not designated any evidence showing that the facility's reliance on audio and visual surveillance of inmates is unsafe in any way or constitutes deliberate indifference. And despite Mr. Blackwell's vague assertions in his amended complaint that the warden was deliberately indifferent to his mobility needs, he has provided no evidence that the facility failed to accommodate either his use of a wheelchair or walker.

For these reasons, Warden Bell is entitled to summary judgment.

### B. Medical Defendants

Mr. Blackwell's February 26, 2016, request for administrative remedy alleged that "Daugherly, MLP" was not qualified to treat Mr. Blackwell's COPD and had used him as a guinea pig in treating his infection. The basis of Mr. Blackwell's complaint appears to be that PA Daugherty prescribed the antibiotic azithromycin on February 4, 2016, but the culture results received from the Oklahoma Transfer Center on January 21, 2016, indicated that his infection would respond well to Bactrim. This claim fails because Mr. Blackwell has not presented any evidence that the named medical defendants were responsible for the delay in receiving Bactrim.

PA Daugherty is not a defendant in this action, but she is the only medical professional to treat the plaintiff between the time the culture results were received, and the time Mr. Blackwell was prescribed Bactrim. Dr. Trueblood and Dr. Wilson did not see Mr. Blackwell during his brief COPD flare. He reported no respiratory distress when he was treated by Dr. Trueblood before the flare. In his response brief, Mr. Blackwell argues that Dr. Trueblood should have reviewed the results of the culture performed in Oklahoma, but the prison had not yet received the results when Dr. Trueblood treated Mr. Blackwell on January 14, 2016.

PA Mata treated Mr. Blackwell on February 8, 2016, and ordered Bactrim after reviewing the results of the sputum culture from the Oklahoma Transfer Center. These facts do not support a finding of deliberate indifference against PA Mata. At his deposition, Mr. Blackwell alleged that PA Mata entered the room when he was being treated by PA Daugherty on February 2, 2016, and that PA Mata looked at a screen, "supported it", and left the room. Dkt. 151-1 at 157-58. He argues that this is evidence that PA Mata was responsible for PA Daugherty's decision to prescribe azithromycin instead of Bactrim initially, although he admits that he did not know what was on the screen when PA Mata looked at it. *Id.* at 158.

Mr. Blackwell attempts to strengthen his claim against PA Mata in his response brief by arguing that he now recalls that she directed PA Daugherty to prescribe azithromycin on February 2, 2016. Dkt. 175 at 3. But when repeatedly questioned at his deposition about his basis for asserting that PA Mata prescribed azithromycin, Mr. Blackwell could only recall that PA Mata entered the room while PA Daugherty was evaluating Mr. Blackwell, looked at a computer screen, and "supported" whatever was on the screen. Dkt. 151-1 at 157-62. Under the sham-affidavit rule, the Court disregards any statements by Mr. Blackwell in his summary judgment response that contradict his deposition testimony. *See James v. Hale*, 959 F.3d 307 (7th Cir. 2020) (discussing and applying sham affidavit rule).

Mr. Blackwell's deposition testimony that PA Mata appeared to support PA Daugherty's decision to prescribe azithromycin because she supported whatever she saw on a computer screen is insufficient evidence to survive summary judgment. Even assuming that PA Mata supported PA Daugherty's decision to prescribe one antibiotic over another without reviewing the culture results, this might show, at most, negligence. And negligence alone is not deliberate indifference. *See Huber v. Anderson*, 909 F.3d 201, 208 (7th Cir. 2018) (deliberate indifference "requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk.") (internal quotation omitted).

Furthermore, the defendants' expert opined that "the initial treatment with azithromycin was not intended to harm Mr. Blackwell and this antibiotic selection along with steroids and breathing treatments were appropriate for his symptoms. No harm was done in delaying his treatment and in fact, his overall control of his chronic respiratory condition improved over the following months." Dkt. 151-14 at 3.

Finally, Mr. Blackwell alleged in his complaint that the medical defendants ignored orders

11

by his previous treating physicians. But Mr. Blackwell conceded that his claims in this case were limited to administrative remedies No. 850591 and No. 854080. Administrative remedy No. 850591 included an allegation that the clinical director, defendant Wilson, prevented Dr. Trueblood from scheduling Mr. Blackwell to be treated by a specialist. Dkt. 59-6 at 9. But Mr. Blackwell failed to provide any evidence to support this claim and the evidence in the record contradicts it. Dr. Wilson's sworn testimony is that the Utilization Review Committee made decisions regarding outside consultations and none of the individual defendants had the power to overrule those decisions. Dkt. 151-2 at 6; dkt. 151-13 at 2. And although Mr. Blackwell disputes that he asked Dr. Wilson to decrease his care level, the evidence shows that Dr. Wilson decreased Mr. Blackwell's care level because Mr. Blackwell no longer met the criteria for the increased care level rather than due to any request by Mr. Blackwell. Dkt. 151- 2. There is no evidence in the record that any of the named defendants failed to follow orders from his previous treating physicians or made decisions about Mr. Blackwell's care based on anything other than sound medical judgment.

For these reasons, the medical defendants are also entitled to summary judgment.

## IV.
## Conclusion

The defendants' motion for summary judgment, dkt. [151], is **granted**. Final judgment consistent with this Order, the previous Order granting partial summary judgment, dkt. [73], and the screening Order, dkt. [26], shall now issue.

**SO ORDERED.**

Date: 11/10/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

KEITH L. BLACKWELL
41030-044
560 N. Kingsley Dr.
Apt. 217
Los Angeles, CA 90004

Rachana Nagin Fischer
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
rachana.fischer@usdoj.gov